IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | |
|---|---|
| TEVIN COMEAUX, in his Individual Capacity and as Personal Representative of the Estate of Arcade Joseph Comeaux, Deceased, and LAKISHA ANTOINE, in her Individual Capacity,<br>PLAINTIFFS,<br>vs.<br>NURSE TAMMY WILLIAMS,<br>DEFENDANT. | CIVIL ACTION CAUSE NUMBER<br>2:15-CV-332-J |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The sole remaining Defendant in this civil rights case, Tammy Williams, has moved for summary judgment on the basis of qualified immunity against all claims and causes of action asserted herein against her. Plaintiffs have responded, and Defendant has replied. For the following reasons, Defendant's motion is granted and a final judgment will be entered in her favor.

## Factual Background

This is a civil rights action brought by the son, Tevin Comeaux, Individually and as personal representative of the estate of Arcade Joseph Comeaux and the daughter, Lakisha Antoine, of the deceased. On November 13, 2013, Comeaux died of sudden cardiac arrest due to ischemic heart disease while in custody of the Texas Department of Criminal Justice, Clements Unit, in Amarillo, Texas. Defendant Williams was a Licenced Vocational Nurse (LVN) at the Clements Unit at all times relevant to Plaintiffs' complaint. As relevant to the claims asserted in this case, Williams' primary job was to process sick call requests (SCR) for the entire unit and determine whether each

offender who submitted a SCR should be scheduled for a nurse clinic visit or whether only a reply was necessary to resolve the issue. Plaintiffs allege that Comeaux died as a result of not receiving urgently needed medical care from August 6, 2013 through November 13, 2013, and that Williams was aware of a substantial risk of harm to Comeaux through the information in the sick call requests that she received from him during that time, as well as from information available to her in his patient record. Plaintiffs sue Williams individually under 42 U.S.C. §1983 for alleged deliberate indifference to Comeaux's serious medical needs.

## Summary Judgment Standards

"The Court may terminate litigation by rendering a summary judgement where no genuine issue of material fact exists and the moving party is entitled to judgement as a matter of law." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987)(citations omitted). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)(initial burden is on movant to show entitlement to summary judgment with competent evidence); Fed. R. Civ. Pro. 56©./[1] "Summary judgement disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions." *Honore v. Douglas,* 833 F.2d at 567. This Court must resolve "all factual uncertainties and mak[e] all reasonable inferences in favor of the nonmoving party." *See id. Accord Bienkowski v. American Airlines,* 851 F.2d 1503,

---

[1] A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law governing the case will identify which facts are material. Id., 477 U.S. at 249, 106 S.Ct. at 2510. *See Bache v. American Tel. and Tel. Co.,* 840 F.2d 283, 287 (5th Cir.), *cert. denied,* 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988).

1504 (5th Cir. 1988)./² Such a finding may be supported by the absence of evidence necessary to establish an essential element of the non-moving party's case. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 322, 106 S.Ct. 82, 121 L.Ed.2d 265 (1986); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 954 U.S. 1125, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Qualified immunity is a defense that protects government officials from suit when they exercise the discretionary functions of their office. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). In order to overcome a defense of qualified immunity, a plaintiff must establish that: "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established at the time of the challenged conduct," *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)(citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011)), and demonstrate that the defendant's conduct was objectively unreasonable in light of the legal rules clearly established at the time of her actions. *Thomas v. City of Dallas*, 175 F.3d 358 (5th Cir. 1999). These requirements will not be satisfied by conclusory allegations of wrongdoing. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988)./³ The court may examine these factors in any order. *Pearson v. Callahan*, 555 U.S. 223 (2009) (*overruling in part Saucier v. Katz*, 553 U.S. 194 (2001)). It is the Plaintiffs' burden to present

---

² However, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2511 (citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

³ The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. In order to overcome this defense, a plaintiff must prove Defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

evidence that a defendant is not entitled to qualified immunity when the defense is raised. *See Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001).

Claims of qualified immunity are not judged on twenty-twenty hindsight, or in light of knowledge ascertained after an event, but by looking through the eyes of the public official, considering what that official knew about the situation at the relevant time. *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *See Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis in original omitted). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### Discussion and Analysis

Williams is entitled to qualified immunity because Plaintiffs have failed to state a cognizable claim for deliberate indifference against her individually. It is undisputed that Defendant Williams' primary relevant job was to process sick call requests for the Clements Unit. Williams did not enter nurse or doctor referrals into the prison's computer system, nor did she personally schedule medical appointments with either a nurse or a doctor. Another clerk was responsible for those entries and had the responsibility of entering that information into the computer system. Another nurse decided

if a prisoner had to see a nurse or a doctor. Williams never physically treated Comeaux, except for assisting in giving him one nebulizer treatment at some unknown point in time, and could not personally either schedule him to see a doctor for his medical care or insure that he timely saw a doctor.

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. Whether a plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). Even if a lapse in professional judgment occurred, such a failure would amount to mere negligence or malpractice; not a constitutional violation actionable pursuant to § 1983. *Harris v. Hegman*, 198 F.3d 530, 535 (5th Cir. 1999) (citing *Medoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiffs have not established that Defendant Williams "refused to treat [Tevin Comeaux], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Estelle v. Gamble, supra*.) "[A]ctions and decisions by prison officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Hernandez v. Tex. Dep't of Protective & Reg. Servs.*, 380 F.3d 872, 883 (5th Cir. 2004) (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Plaintiffs' claims against Williams do not amount to deliberate indifference. At most, they are state-court negligence claims. The prison medical records document that Comeaux received medical care while incarcerated; even given his extreme high risk status as an inmate due to his previous assaultive history, pulling a weapon on transportation officers and escaping on foot from his wheelchair. Because of his security status, extensive measures had to be taken every time Comeaux was removed from his cell. Comeaux was a level three inmate, which meant that in order to open his cell door there would have to be two escorting officers present, a supervising officer, the rank of sergeant or higher, and an officer recording the entire encounter on continuous video camera.

Defendant Williams' primary job, as relevant to the deliberate indifference constitutional claims asserted against her in this case, was to timely respond to inmate sick call requests (SCR). Williams testified that she received anywhere from 60 to 80 such requests per day. Williams did not have the ability to go do a cell check on every inmate who submitted a SCR. Other nurses did that, and did provide that medical care to Comeaux. At the time of Comeaux's death, Williams did not provide direct medical treatment to inmates and did not have the benefit of going to see the patient and ascertain whether he was well and breathing normally. Her primary job, as relevant to this case,

was to stay in the nurses' station and respond to all of the inmate SCRs the unit received daily. She was not authorized to go find a doctor in the hallway somewhere, or in another building far away where actual medical treatment was being provided, to find a doctor to treat him now, or to try to order a doctor to promptly either go see Comeaux, or to immediately schedule a medical care appointment for Comeaux.

Williams did not have the authority to speed up medical provider appointments, nor was she responsible under prison policy for ensuring compliance with provider appointments that were admittedly past due because of a lack of medical care providers. Williams' only real option when faced with a past-due provider appointment was to reply that the inmate was already scheduled, or send the SCR onward to be scheduled for a nurse clinic visit for a patient assessment or a doctor's appointment. In this case, Williams' primary relevant job was to address the patient's concerns by responding that Comeaux was scheduled to see a medical care provider. It is undisputed that Williams had no control over the medical providers' appointment schedules.

Williams was also tasked with the responsibility of screening SCRs that are repetitive to make sure that one inmate's medical concerns are not being missed or overlooked because she is so consumed with someone else's repetitive SCRs. Many of Comeaux's SCRs that Williams responded to had virtually the same complaint. Comeaux repeatedly stated that he wanted his albuterol prescription changed from renewal every 90 days to every 30 days. For those, Dr. Leeah testified that because Comeaux's complaints were repetitive and had not changed, Williams' reponse that he was already scheduled to see a provider was appropriate. Mere speculation as to what Williams might have done, or should or could have done otherwise, or did regarding another prisoner's SCR at some unknown date in the past does not make a constitutional deliberate-indifference claim viable in this case.

7

When Williams received Comeaux's last SCR on November 13, 2013, complaining that he could not get sufficient air in his lungs and that his inhalers were not helping, Dr. Leeah testified that Williams' response that Comeaux was scheduled to see a provider instead of scheduling a nursing visit was appropriate because Comeaux had just received a nursing visit. In fact, he had seen a doctor hours before he died. Under the relevant prison policy, if the patient has been seen by a nurse or provider for the same or similar complaint as his new SCR within the last two weeks, then the new SCR would not necessarily trigger any new action by that nurse. To the extent that Plaintiffs complain that this policy was constitutionally inadequate, they do not have a viable constitutional claim against Williams individually.

Plaintiffs assert what Williams could have done, should have done, and what a reasonable nurse would have done in her position; however, none of these allegations rise to the level of conscious deliberate indifference by Williams. None of Plaintiffs' allegations show egregious conduct by Williams that would produce an unnecessary and wonton infliction of pain to Comeaux. Plaintiffs have failed to come forward with evidence that Williams refused to treat Comeaux, ignored his complaints, failed to respond to his SCRs, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince "a wanton disregard" for Comeaux's "serious medical needs." *See Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Williams followed required prison medical protocols; responded to Comeaux's repeated complaints even though he was already scheduled to see a provider for his SCR and, when there was a new complaint or when Williams felt that a nurse clinic appointment was appropriate, she saw that his SCR was sent on to the appropriate prison employee person to decide if another appointment should be scheduled with a nurse or a doctor.

Five nurses responded to Comeaux's written requests for care during the relevant time frame. Despite Comeaux's asserted urgency, four of those nurses who assessed him noted in the medical records that he was in his normal state of health, without a respiratory abnormality. In between those nursing visits from the medical department, mental health staff assessed Comeaux and did not record signs of distress or abnormality in his breathing. Those medical observations were noted in the prison system's medical files, to which Plaintiffs point out Williams had computerized access. The evidence in this record shows that there were periods of delay in Comeaux seeing a medical care provider, however, the delays were not legally attributable to Williams. At most, the delays may amount to negligence that is not actionable under § 1983.

### Conclusions

Defendant Williams is entitled to summary judgment pursuant to Rule 56 on qualified immunity grounds because Plaintiffs have failed to show that there exists a genuine issue of material fact as to that qualified immunity defense as asserted by Defendant Williams.

Accordingly, Defendant Williams' motion for summary judgment is granted. Because she is the sole remaining party defendant, a final judgment will be entered in accordance with this opinion.

It is SO ORDERED.

Signed this the 6th day of October, 2017.

MARY LOU ROBINSON
SENIOR UNITED STATES DISTRICT JUDGE